IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal No.: 14-10080 JDB |
| ) | |
| vs. ) | 18 U.S.C. § 1591(a) |
| ) | 18 U.S.C. § 1594(c) |
| OSBIE ANTONIO SEA, ) | |
| a/k/a "MONEY," ) | |
| a/k/a "HARD MONEY," and ) | |
| a/k/a "Mr. Money," ) | |
| ) | |
| Defendant. ) | |

## INFORMATION

THE UNITED STATES ATTORNEY CHARGES:

### COUNT 1
(Conspiracy to Commit Sex Trafficking of a Child)

1.

In or about January 2013 and continuing until in or about March 2013, the exact dates being unknown, in the Western District of Tennessee and elsewhere, the defendant,

**OSBIE ANTONIO SEA**

**a/k/a "MONEY," a/k/a "HARD MONEY," and a/k/a "Mr. Money,"**

together with others known and unknown to the United States Attorney, did knowingly combine, conspire, confederate, and agree to recruit, entice, harbor, transport, provide, obtain, and maintain by any means, in and affecting interstate commerce, a person, namely, M.S., a minor whose identity is known to the United States Attorney and to the defendant, and did benefit, financially and by receiving something of value, from

participating in such a venture, knowing, and in reckless disregard of the fact, that M.S. had not attained the age of 18 years and would be caused to engage in a commercial sex act, and knowing, and in reckless disregard of the fact, that force, threats of force, fraud, and coercion, as defined in Title 18, United States Code, Section 1591(e)(2), and any combination of such means, would be used to cause M.S. to engage in a commercial sex act and did attempt to do so, in violation of Title 18, United States Code, Sections 1591(a) and 1594(c).

**Manner and Means of the Conspiracy**

2.

In or about January 2013 and continuing until in or about March 2013, the defendant, **OSBIE ANTONIO SEA ("SEA")**, and others known and unknown to the Grand Jury, recruited, enticed, transported, and harbored the minor victim, M.S., and forced her to engage in prostitution in the Memphis metropolitan area for the financial benefit of the defendant and others involved in the conspiracy.

3.

It was part of the conspiracy that **SEA** and others involved in the conspiracy received monies and other things of value by having the minor victim engage in commercial sex acts.

4.

It was further part of the conspiracy that **SEA** and others involved in the conspiracy used hotels to facilitate commercial sex acts with the minor victim.

5.

It was further part of the conspiracy that **SEA** and others involved in the conspiracy used the Internet, which is an instrumentality of interstate commerce, to facilitate the commercial sex acts with the minor victim by posting advertisements on Internet websites, such as www.Backpage.com.  Commercial sex customers would respond to the advertisements via telephones, which are also instrumentalities of interstate commerce, and were directed to the hotel where the commercial sex acts took place.

**Overt Acts**

6.

In furtherance of the conspiracy and to accomplish its object, the defendant, **OSBIE ANTONIO SEA ("SEA")**, and other persons known and unknown to the United States Attorney, committed and caused to be committed the following overt acts, among others, in the Western District of Tennessee and elsewhere:

  a. Sometime between January 2013 and February 2013, **SEA** and an unindicted co-conspirator, whose identity is known to the United States Attorney and to the defendant, approached the minor victim, M.S., while she was shopping at a retail store in Memphis, Tennessee;

  b. While at the retail store in Memphis, Tennessee, **SEA** gave the minor victim a business card containing his name, phone number, and social media identification information and told her to call him if she wanted to make some money;

c. After meeting **SEA**, the minor victim spoke with him by telephone where she told **SEA** that she was 14 years old.

d. On or about March 1, 2013, after **SEA** received a phone call from the minor victim indicating that she had run away from home, **SEA** and the unindicted co-conspirator picked up the minor victim from near her residence and eventually transported her to the Extended Stay America, a hotel located in Memphis, Tennessee, for the purpose of having the minor victim engage in commercial sex acts;

e. **SEA** and others known and unknown to the United States Attorney rented hotel rooms at the Extended Stay America for the purpose of using the rooms to allow commercial sex customers to have commercial sex with the minor victim;

f. **SEA** told the minor victim to tell everyone that she was 18 years old because he knew he could get in trouble if her true age was revealed;

g. **SEA** and the unindicted co-conspirator provided the minor victim with food, shelter, marijuana, and alcohol during the time that she was with them;

h. **SEA** and the unindicted co-conspirator used a cellular telephone and a camera to take pictures of the minor victim dressed only in a towel and posted said pictures on Internet websites, such as www.Backpage.com, in an attempt to obtain commercial sex customers to have commercial sex with the minor victim;

i. **SEA** instructed the minor victim on how to pose and look sexy for the pictures that were to be posted on the Internet for the purpose of advertising the minor

victim to commercial sex customers, while the unindicted co-conspirator photographed the minor victim;

j. On or about March 1, 2013, at **SEA's** direction, the unindicted co-conspirator posted an advertisement to the Internet website, www.Backpage.com, entitled "80 in/call Your Fantasy! /// Ashley /// Hot and ready. -19," which featured sexually suggestive pictures of the minor victim. The advertisement listed the unindicted co-conspirator's phone number as the point of contact for potential commercial sex customers and was paid for with a prepaid debit card supplied by **SEA**.

k. **SEA** and the unindicted co-conspirator instructed the minor victim on the prices to be charged for various commercial sex acts — $80 for a quickie; $100 for half an hour; $150 for an hour; and $200 for two girls at the same time.

l. **SEA** explained the rules of working to the minor victim: (1) no leaving; (2) no outside contact; and (3) no other guys;

m. At **SEA's** direction and for his benefit, the unindicted co-conspirator used a cellular telephone to communicate with potential commercial sex customers to arrange commercial sex acts between the customers and the minor victim. Once the potential sex customers passed the required screening process developed by **SEA** to ensure that they were not law enforcement officers, the unindicted co-conspirator provided the hotel's address and directions to the potential sex customers;

n. The screening process required each prospective customer to send to the unindicted co-conspirator, via text message, a photograph of his genitals with three fingers placed on top.

o. At the direction of **SEA** and the unindicted co-conspirator, the minor victim engaged in sexual acts with customers in exchange for money. All of the money that the minor victim earned after performing sexual acts was given to **SEA**;

p. On or about, March 2, 2013, **SEA** and the unindicted co-conspirator transported the minor victim to the Days Inn, a hotel located in Memphis, Tennessee. While at this location, at **SEA's** direction and for his benefit, additional photographs of the minor victim were taken where she was posed in various positions and wearing a black dress, all for the purpose of advertising the minor victim on Internet websites, such as www.Backpage.com, to solicit commercial sex customers for a commercial sex act involving the minor victim.

The above is a violation of Title 18, United States Code, Sections 1591(a) and 1594(c).

DATED: SEPTEMBER 11, 2014

EDWARD L. STANTON III
UNITED STATES ATTORNEY